## IN RE WILL OF BURBANK.

1. **Will:** CONSTRUCTION: ESTATE FOR LIFE OR IN FEE: REPUGNANT BEQUESTS VOID. The testator in this case used this language: "I give to my wife * * * the entire control and use of my property of every nature during her life, after paying any debts I may owe, to be by her controlled, used and disposed of as she may think best, as fully as I could do the same were I living." *Held* that the will conferred upon the widow the absolute ownership of the property, and that subsequent bequests made in the same instrument were void, because repugnant to the absolute gift to the wife. (Compare *Rona v. Meier*, 47 Iowa, 607; *Alden v. Johnson*, 63 Id., 124.)

*Appeal from Fayette Circuit Court.*

WEDNESDAY, JUNE 23.

IRA BURBANK died on the second of July, 1877. His will, which was executed in 1871, was admitted to probate by the circuit court of Fayette county on the twentieth of October, 1877. It contains the following provision:

"I give to my sister, Almira Burbank, the sum of one hundred dollars yearly, during her life, this annuity to commence at my death. I give to my wife, Silenda Burbank, after the payment of the foregoing bequest to my sister, Almira Burbank, the entire control and use of my property of every nature, during her life, after paying any debts I may owe, to be by her controlled, used and disposed of as she may think best, as fully as I could do the same were I living. I give to my brother, Ansel Burbank, the sum of five hundred

dollars, to be paid from my estate after the death of. my said wife, unless she has paid this bequest during her life, in' which case no further payment shall be paid to my said brother. In case of his death, this bequest to go to his son, Eleazer Burbank. I give to my nephew, Dana Burbank, son of Alvin Burbank, the sum of five hundred dollars, to be paid from my estate, after the death of my said wife, unless she has paid the sum during her life, in which case no further sum shall be paid to him. I give the sum of twelve thousand dollars to the first Universal church or society that may be organized in West Union, Fayette county, Iowa, to be used expressly in building a Universal church building in West Union, as aforesaid, to be paid after the death of my said wife. I give the remainder and residue of my estate, after the death of my said wife, and after the payments of the foregoing bequests, to the Methodist and Congregational societies or churches in Bethel township, Fayette county, Iowa, and to the Episcopal society of West Union, Fayette county, Iowa, to be equally divided among said societies, and to be used for the purpose of building church buildings for those two first named societies, in said township of Bethel, and to the last named, in the town of West Union, in said county."

In another clause of the will the testator named his widow as executrix during her life. He also nominated three persons to be appointed as executors after her death. The widow died on the second day of November, 1883, and two of the persons named for appointment as executors after her death qualified as such soon afterwards. The executors filed a petition on the ninth of March, 1885, in which they asked the circuit court to construe and interpret the will, and instruct them as to their duties in the distribution of the assets of the estate. Ansel Burbank and Dana Burbank, who are named as legatees, became parties to this proceeding, as did also the other heirs at law of Ira Burbank. These parties joined in a petition to the court, in which they alleged

that the bequest to the widow gave her but a life-estate in the property; and they prayed that the assets, after paying the annuity to Almira Burbank, and the specific bequests to Ansel and Dana Burbank, be distributed among them. They also alleged that the bequest to the first Universal society which should be organized in West Union was void for uncertainty, there being no organization in existence, at the time the bequest was made, which was capable of taking it; also that it was contrary to section 1101 of the Code, being more than one-fourth of the estate of the testator. The heirs at law of the widow, Silenda Burbank, also became parties to the proceeding, and filed a petition therein, in which they alleged that, under the bequest to her, she took an absolute estate in all of the property of the estate, subject only to the annuity to Almira Burbank, and that upon the death of Silenda Burbank all the property then undisposed of descended to them. The first Universal church of West Union also became a party, and filed a petition, claiming a portion of the property under a conveyance to it by Silenda Burbank after the death of the testator. The circuit court adjudged that the bequest to Silenda Burbank was absolute, and that she became the absolute owner of all of the property, subject only to the annuity to Almira Burbank. Ansel and Dana Burbank, and the other heirs at law of Ira Burbank, appeal.

*D. W. Clements*, for appellants.

*Answorth & Hobson, J. W. Rogers & Son* and *Hoyt & Hancock*, for appellee.

REED, J.—The question in the case is whether the widow of the testator took a life-estate, or an estate in fee, under the bequest to her. If she took an estate in fee, the bequests due to Ansel and Dana Burbank, and the three religious societies named in the will, are repugnant to the estate conferred upon her, and are consequently void. *Rona v. Meier*,

47 Iowa, 607; *Alden v. Johnson,* 63 Id., 124; *Jackson v. Bull,* 10 Johns., 18; *Same v. Delaney,* 13 Id., 535; *Same v. Robins,* 15 Id., 168; *Same v. Same,* 16 Id., 537. The language, "I give to my wife, Silenda Burbank, * * * the entire control and use of my property of every nature, during her life," standing alone, would indicate an intention by the testator to bestow but a life-estate on the legatee. By the subsequent words, however, a power of disposal is conferred on the devisee, and this provision is of the highest importance in determining the effect of the bequest. If it could be said that this power was annexed to the life-estate created by the preceding words of the bequest, and that it empowered the devisee simply to dispose of that estate, or even of the reversion, she would not take an estate in fee under the bequest. *Jackson v. Robins,* 16 Johns., 587; *Thomlinson v. Dighton,* 1 Salk., 239; *Crossling v. Crossling,* 2 Cox, Eq., 396; *Reid v. Shergold,* 10 Ves., 370.

On the other hand, if the power was conferred upon the legatee to make absolute disposition of the property, it carried with it an estate in fee. *Rona v. Meier, supra.* See, also, the cases cited above from 10, 13, 15, and 16 Johns.; also *Ide v. Ide,* 5 Mass., 499; *Hale v. Marsh,* 100 Id., 468. We are of the opinion that the devisee was empowered by the bequest to dispose of the property absolutely. The gift is of the control and use of the property during her life, "to be by her controlled, used and disposed of as she may think best, as fully as I could do the same were I living." The power of disposal conferred by this language clearly relates to the property of which, by the preceding words of the bequest, the control and use are given to the devisee. The language cannot, under any of the settled rules of construction, be made to relate to anything else. The power conferred, then, upon the legatee, was to dispose of the property as she might think best, and as fully as the testator might do if he were living. She was empowered to sell it, to donate it by way of gift during her life, or by bequest at her death. The

grant of so absolute a power and dominion over the property necessarily carried with it the absolute ownership of it.

We think the judgment of the circuit court is clearly right.

AFFIRMED.