MANSFIELD, Justice
(dissenting).
I respectfully dissent, essentially for the reasons set forth in the well-reasoned dissent filed in the court of appeals. Rather than attempt to paraphrase that opinion, I will simply quote it in full, and then add a few observations of my own:
The questions presented in this appeal are questions of first impression regarding the interpretation and construction of this newly-enacted statute. “In determining the meaning of statutes, our primary goal is to give effect to the intent of the legislature.” State v. Hearn, 797 N.W.2d 577, 583 (Iowa 2011). “That intent is evidenced by the words used in the statute.” Id. “The starting point of interpreting a statute is analysis of the language chosen by the legislature.” Id.
Chapter 235 allows a “vulnerable elder” to seek relief from elder abuse by filing a verified petition in the district court. See Iowa Code § 235F.2(1). As a prerequisite to obtaining relief, the petitioner must prove by a preponderance of the evidence that “elder abuse” occurred. The [C]ode sets forth four categories of elder abuse. As relevant here, the [C]ode defines “elder abuse” to include “financial exploitation.” Iowa Code § 235F.l(5)(a)(4). “‘Financial exploitation’ relative to a vulnerable elder means when a person stands in a position of trust or confidence with the vulnerable elder and knowingly and by undue influence, deception, coercion, fraud, or extortion, obtains control over or otherwise uses or diverts the benefits, property, resources, belongings, or assets of the vulnerable elder.” Iowa Code § 235F.1(8). According to the plain language of the statute, to prove “financial exploitation,” the petitioner must first establish the exploited person is a “vulnerable elder.”
The fighting issues in this case are the meaning of “vulnerable elder” and the sufficiency of the evidence regarding the same. The statute provides a “ ‘[vulnerable elder’ means a person sixty years of age or older who is unable to protect himself or herself from elder abuse as a result of age or a mental or physical condition.” Iowa Code § 235F.1(17). The plain language of the statute requires proof of three elements. First, the person must be “sixty years of age or older.” Second, the person must be “unable to protect himself or herself from elder abuse.” Third, the person’s inability to protect himself or herself from elder abuse must be “as a result of age or a mental or physical condition.” Only by requiring proof of all three elements, do we give effect to all of the words the legislature selected. See Iowa Auto Dealers Ass’n v. Iowa Dep’t of Revenue, 301 N.W.2d 760, 765 (Iowa 1981) (“Moreover, a statute should not be construed so as to make any part of it superfluous unless no other construction is reasonably possible.”).
The petitioner in this case failed to prove an inability to protect herself from *860 elder abuse and failed to prove this inability was a result of her age or a mental or physical condition. The only thing we can discern from this record is the petitioner was sixty-nine years old at the time of the hearing. The petitioner did not introduce any evidence into the record regarding her ability or inability to protect herself from elder abuse. The only reasonable inference that could be made from this record, based on the petitioner’s description of her living arrangement and the tone of her testimony and remarks, is the petitioner is an independent woman fully capable of protecting her own interests. The petitioner failed to present any evidence regarding her mental condition or physical condition. The petitioner also failed to present any evidence that her age, mental condition, or physical condition in any way impaired her ability to protect herself from elder abuse. In sum, the record shows only that the petitioner is sixty-nine years of age and that she is in a property dispute with her son. That is insufficient to establish elder abuse pursuant to chapter 235F.
While there is no controlling case, other jurisdictions with similar statutes have concluded the petitioner must establish an inability to self-protect caused by some statutorily-recognized condition. See, e.g., Estate of Cole, No. 1CA-CV 12-0810, 2014 WL 1515730, at *4 (Ariz. Ct. App. Apr. 17, 2014) (stating it is a “threshold element! ]” that the petitioner prove “the individual suffered from a physical or mental impairment that prevented the individual from protecting herself from abuse, neglect, or exploitation by others”); State v. Maxon, 32 Kan.App.2d 67, 79 P.3d 202, 207 (2003) (stating “dependent adult” statute required proof the victim was unable to protect herself or himself); Doe v. S.C. Dep’t of Social Servs., 407 S.C. 623, 757 S.E.2d 712, 720 (2014) (vacating order where “there is no evidence that Doe’s advanced age substantially impaired her ability to adequately provide for her own care and protection”); Farr v. Searles, 180 Vt. 642, 910 A.2d 929, 930 (2006) (vacating protective order where the petitioner failed to establish an infirmity impairing her ability to protect herself from abuse, neglect, or exploitation).
The requirement that the petitioner present some evidence of her inability to protect herself due to a statutorily-recognized cause is in accord with the purpose of the statute. The intent of this law and related elder abuse laws is to provide protection for those who may be subject to abuse, neglect, or exploitation due to an inability to protect themselves. Without requiring proof of the inability to protect, the statute would encompass garden-variety legal claims that happen to be held by persons over the age of sixty. Such a result is overbroad in two respects. It creates a cause of action for persons outside the intended scope of the statute. It also creates unintended legal exposure for persons who happen to be in a dispute with someone over the age of sixty but who is not otherwise a “vulnerable elder.”
For the foregoing reasons, I respectfully dissent. I would vacate the final elder abuse protective order and remand this matter for dismissal of the petition.
On the law, the court today does not appear to take a different view from the court of appeals dissent. That is, the court acknowledges that to prove she was a vulnerable elder, Chapman had to establish she was unable to protect herself due to her age. The court, however, goes on to conclude that Chapman met her burden as a factual matter. Here, I disagree.
*861 The court’s opinion lists six items supporting a finding that Chapman was a vulnerable elder. However, the first five are just background facts. The sixth item is the following testimony: “[I]t’s just worrisome. I’m tired of having these eviction notices. And I’m just too old for it.”
In my view, Chapman’s colloquialism that she was “too old” to be receiving eviction notices falls short of demonstrating that she was unable to protect herself because of her age. Chapman’s daughter was living with Chapman in the mobile home. When an eviction notice was posted stating that Chapman needed to be out by December 1, 2014, Chapman short-circuited any forcible entry and detainer proceeding by promptly going to court on November 5 seeking relief from “elder abuse.” She was never in jeopardy of losing her residence.[1]
Although Wilkinson had sole legal title to this double-wide mobile home, the record here would support a finding that Chapman retained a life estate. All this, however, could have been worked out in an appropriate title proceeding. Such a proceeding would result in a final decree defining legal interests in the property. This would assure that the title to the property remained marketable, protect third parties who had dealings relating to the property, and also clarify the status of assets for Medicaid purposes. See Iowa Code § 249A.53(2)(c) ’ (2015) (providing that Medicaid debt may be recovered to the extent of any “retained life estates”).[2] A temporary injunction would also be available in a title proceeding if needed.
Moreover, the label of “elder abuse” can be stigmatizing. Wilkinson himself testified to his surprise upon learning that he was being charged with elder abuse: “I was floored by that.” This potential for stigma provides an additional reason for not expanding the elder abuse law unduly. The elder abuse law was written to be, and should remain, a cause of action for persons who are unable to protect themselves “as a result of age,” and not merely have attained a certain age. For these reasons, I would reverse the judgment of the district court and the decision of the court of appeals.[3]
Waterman and Zager, JJ., join this dissent.

. In fact, after the temporary order was entered, Wilkinson had to ask for a brief continuance of the final hearing because of an Iowa National Guard obligation.

. Although we have no such information in the record here, Medicaid planning is one reason why the elderly may transfer assets to their relatives. See, e.g., In re Estate of Johnson, 739 N.W.2d 493, 494 n.2 (Iowa 2007).

. No issue is presented in this appeal as to whether the "financial exploitation” element in the statute has been met. See Iowa Code § 235F.1(8) (defining financial exploitation as “when a person stands in a position of trust or confidence with the vulnerable elder and knowingly and by undue influence, deception, coercion, fraud, or extortion, obtains control over or otherwise uses or diverts the benefits, property, resources, belongings, or assets of the vulnerable elder”).